UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| CHRISTOPHER FITZGERALD,  )<br>  )<br>Plaintiff  )<br>  )<br>v.  )<br>  )<br>CBS BROADCASTING INC.,  )<br>  )<br>Defendant  )<br>  ) | CIVIL ACTION NO.<br><br>06-CV-11302-NG |

**MEMORANDUM OF LAW OF CBS BROADCASTING INC.,
IN SUPPORT OF MOTION TO DISMISS, OR IN THE ALTERNATIVE,
FOR SUMMARY JUDGMENT**

Defendant CBS Broadcasting Inc. respectfully submits this memorandum in support of its motion to dismiss or, in the alternative, for summary judgment.

As shown below, the instant action is an impermissible attempt to split copyright claims the plaintiff already has brought in a separate action pending before this court against the very same defendant and alleging infringement of the very same work. See Christopher Fitzgerald v. CBS Broadcasting Inc., D. Mass. No. 04-12138-NG ("Fitzgerald I")[1]. Because there is no legal basis for the plaintiff's formalistic attempt to collect multiple damages awards by filing duplicative lawsuits against the same defendant alleging infringement of the same work, this action should be dismissed and the defendant awarded its costs and fees under 17 U.S.C. § 505.

---

[1] Before Fitzgerald I, which was filed in 2004, Fitzgerald previously brought an action against CBS Broadcasting Inc. in 1998. The action, entitled Fitzgerald v. CBS Corporation, Civil Action No. 98-11510, was settled in 1999 and subsequently dismissed with prejudice.

I.  **STATEMENT OF UNDISPUTED MATERIAL FACTS**

**The Parties and Television Stations Involved in this Case**

Plaintiff Christopher Fitzgerald ("Fitzgerald") is a photographer. Statement of Undisputed Material Facts ("SOF") at ¶1; Complaint at ¶1. In 1995, while on assignment for the Boston Globe, Fitzgerald photographed Boston mobster Stephen Flemmi outside the Framingham State Police Barracks being escorted by law enforcement officers after his arrest (the "Flemmi Photograph"). SOF at ¶2; Complaint at ¶3 and Exhibit A; Deposition of Christopher Fitzgerald dated July 20, 2006 ("Fitzgerald Dep.") at 79:3-80:23, attached as Exhibit 3 to Affidavit of Mary B. Murrane ("Murrane Aff.").

Defendant CBS Broadcasting Inc. is an affiliate of CBS Corp. ("CBS"). CBS, formerly known as Viacom, owns and operates the Boston television stations of CBS-4 (Channel 4) (previously known as WBZ-TV) and WSBK-TV (Channel 38). SOF at ¶3; Answer of CBS Broadcasting Inc., dated December 23, 2004, filed in response to the Complaint in the 2004 Case,[2] attached as Exhibit 2 to Murrane Aff.; July 29, 2005 Ownership Report for Commercial Broadcast Stations filed by Viacom, Inc. (without exhibits) attached as Exhibit 7 to Murrane Aff.

CBS-4 (previously WBZ-TV) and WSBK-TV are call letters, not legal entities. SOF at ¶4; July 29, 2005 Ownership Report for Commercial Broadcast Stations filed by Viacom, Inc. (without exhibits) attached as Exhibit 7 to Murrane Aff. CBS-4 and WSBK-TV operate as "sister stations," physically located in the same office space and owned by the same company (CBS). SOF at ¶4; Deposition of Jennifer Street dated July 19, 2006 ("Street Dep.") at 137:16-138:4, attached as Exhibit 4 to Murrane Aff.

---

[2] Defendant's Answer and its Corporate Disclosure Statement filed in <u>Fitzgerald</u> <u>I</u> informed Fitzgerald that CBS Corp., *not* CBS Broadcasting Inc., was the owner of CBS-4 and WSBK-TV. Fitzgerald has not yet moved to substitute the correct defendant and, in fact, named the wrong defendant again in this case. Rather than waste the court's and the parties' time on needless motion practice that can easily be obviated by an amendment naming the correct party, this motion proceeds on the basis that the misnomer will be corrected before the court rules on the merits of the motion to dismiss.

2

Both stations broadcast news programs, and operate unified news organizations. They share studio space, news trucks, video library, and news equipment, as well as employee resources such as writers, reporters, camera crew, on-air personalities, producers and directors. SOF at ¶5; Street Dep. at 137:16-138:4; 126:2-132:2, attached as Exhibit 4 to Murrane Aff. All news resources available to one station is available to the other. This shared structure was in place in 2004 and continues today. Id.

The joint nature of the stations' news divisions is substantial. For example, when CBS-4 finishes its broadcast of the news at 6:58 p.m., the same anchors stay at their desk, a new background is put into place behind them and the same two anchors then report the 7:00 p.m. news on WSBK-TV. SOF at ¶6; Street Dep. at 130:9-130:21, attached as Exhibit 4 to Murrane Aff.. The news programs are produced by the same employees whether the news is running on CBS-4 or WSBK-TV, and these employees are all paid by the same CBS entity. SOF at ¶6; Street Dep. at 140:5-140:11, attached as Exhibit 4 to Murrane Aff.

**The Alleged Infringements of June 24 and June 25, 2004**

On June 24, 2005, CBS-4 reported on the sentencing of John Martorano and his agreement to cooperate with law enforcement authorities pursuing criminal charges against Flemmi and Whitey Bulger. SOF at ¶7; Answers and Objections of CBS Broadcasting Inc. to Plaintiff's First Set of Interrogatories, Interrogatory No. 5, propounded in Fitzgerald I, , attached as Exhibit 5 to Murrane Aff. Some of the CBS-4 news reports on June 24, 2004 and the morning of June 25, 2004 included an image of the Flemmi Photograph taken by Fitzgerald. The Photograph also appeared on a news clip available on CBS-4's website. Id.

CBS believes that the Photograph also may have been broadcast on a WSBK-TV news report that aired at 7:00 a.m. on June 25, 2004. Because the morning news broadcasts are not archived, CBS has not been able to confirm whether the Photograph in fact aired on WSBK-TV. SOF at ¶8; Answers and Objections of CBS Broadcasting Inc.

to Plaintiff's First Set of Interrogatories, Interrogatory No. 5, propounded in Fitzgerald I, and Street Dep. at 151:21-152:6, attached as Exhibits 5 and 4 to Murrane Aff.

**The Fitzgerald I Suit**

Fitzgerald filed the Fitzgerald I suit against CBS Broadcasting Inc. in October 2004. His complaint alleges that "CBS copied the [Flemmi] Photograph without Plaintiff's permission or authority and broadcast the image on WBZ-TV, Channel 4, Boston, on numerous occasions including but not limited to June 24 and June 25, 2005." See SOF at ¶9; Complaint in Fitzgerald I, Civil Action No. 04-12138-NG at ¶5, attached as Exhibit 1 to Murrane Aff.[3] The complaint also alleges that CBS used the Flemmi Photograph on its website without Fitzgerald's permission. Id. "As a result," the complaint alleged, "Plaintiff's copyright has been infringed for which Plaintiff is entitled to his damages." Id.

Discovery in Fitzgerald I proceeded, including depositions of the parties and paper discovery. SOF at ¶10; Murrane Aff. at ¶4. During the course of the litigation, Fitzgerald claimed that he was entitled to *two* sets of statutory damages under 17 U.S.C. §504(c)(1) -- one for the broadcast of the Flemmi Photograph on CBS-4, and another for the broadcast (if it occurred) on WSBK-TV. According to Fitzgerald, he therefore was entitled to a total of $300,000 in statutory damages (the maximum statutory damage award allowed for willful infringements under 17 U.S.C. § 504(c)(2) of $150,000, multiplied by two).[4] Id.

---

[3] For purposes of the motion to dismiss, the Court may take judicial notice of the previous filings in Fitzgerald I. Town of Norwood v. New England Electr. Power Co., 202 F.3d 408, 412 (1st Cir. 2000) (court may consider administrative agency decision in context of motion to dismiss) (citing McKinney v. Waterman Steamship Corp., 925 F.2d 1, 5 (1st Cir. 1991)); Rasheed v. Duval, 57 F.3d 1061 (1st Cir. 1995) ("a court may look to matters of public record in ruling on a motion under Fed. R. Civ. P. 12(b)(6) without converting the motion into one for summary judgment") (citing Watterson v. Page, 987 F.2d 1, 3-4 (1st Cir. 1993)).

[4] Fitzgerald's aggressive damages calculations (and perhaps his decision to file this duplicative action) appear based on the fact that, as discovery has revealed, the most he ever has been paid for licensing the Flemmi photograph for a single use is $800. See SOF at ¶11; Murrane Aff. at 5.

In response, and apart from its defenses on the merits, CBS disputed that broadcasting the Flemmi Photograph over two commonly owned stations exposed it to multiple statutory damages awards, citing Venegas-Hernandez v. Sonolux Records, 370 F.3d 183, 194 (1st Cir. 2004) (the amount "that a plaintiff may recover in any given action against a single defendant depends on the number of *works* that are infringed and the number of individually liable *infringers* and is unaffected by the number of *infringements* of those works"). SOF at ¶12; Murrane Aff. at ¶6. The parties anticipated presenting the issue to the court as part of their summary judgment motions in Fitzgerald I. See SOF at ¶13; March 8, 2006, Report of Alternative Dispute Resolution Provider (docket entry 14) ("Further progress might be possible once a legal determination is made as to whether the case involves just one use or two uses (CBS 4 and Channel 38) of the copyrighted picture(s), since such a decision will determine the maximum statutory damages which can be awarded at trial."), a copy of which is attached as Exhibit 6 to Murrane Aff.

### The Fitzgerald II Suit

On July 28, 2006, almost two years after filing Fitzgerald I, plaintiff filed this action ("Fitzgerald II"). The case involves the same plaintiff, the same defendant, the same allegedly infringed work, and the same time period at issue in Fitzgerald I (i.e., "on numerous occasions including but not limited to June 24 and June 25, 2005"). Literally the only difference between the two complaints is the substitution of UPN 38 (WSBK-TV) for CBS-4 when identifying the station owned by CBS over which the Flemmi Photograph was broadcast, and the deletion of an allegation regarding use on a website. See SOF at ¶14, Fitzgerald I Complaint, ¶¶ 2, 5, attached as Exhibit 1 to Murrane Aff.; Fitzgerald II Complaint, ¶¶ 2, 5.

## II. ARGUMENT

### A. The Complaint Should be Dismissed Because it Seeks Double Recovery for the Same Work from the Same Defendant.

CBS maintains that Fitzgerald is not entitled to any recovery for use of the Flemmi Photograph because, among other things, the news reports were a fair use and protected by the First Amendment. That issue -- currently being briefed in summary judgment filings in Fitzgerald I -- need not be reached in deciding this motion. Rather, CBS seeks the dismissal of this duplicative case on the grounds that Fitzgerald is not entitled to recover twice against the same defendant for alleged infringements of the same work.

The Copyright Act is crystal clear that a plaintiff is limited to one award of statutory damages against any one defendant for all infringements of any one work:

> [T]he copyright owner may elect, at any time before final judgment is rendered, to recover, instead of actual damages and profits, an award of statutory damages for all infringements involved in the action, with respect to any one work, for which any one infringer is liable individually, or for which any two or more infringers are liable jointly and severally.

17 U.S.C. §504(c)(1) (emphasis added).

Any conceivable doubt about this issue was definitively resolved by the First Circuit's decision in Venegas-Hernandez v. Sonolux Records, 370 F.3d 183 (1st Cir. 2004). The plaintiffs in Sonolux owned the copyright to two songs that the defendant had used on at least 16 different albums. 370 F.3d at 185-86. The plaintiffs sought to collect separate statutory damages awards for each of the 16 infringing albums. In an opinion that carefully examined the statutory framework, legislative history and case law concerning the Act's statutory damages provisions, the First Circuit squarely rejected the plaintiffs' claim for multiple statutory damages.

> [U]nder § 504(c) the total number of "awards" of statutory damages that a plaintiff may recover in any given action against a single defendant depends on the number of *works* that are infringed and the number of individually liable *infringers* and is unaffected by the number of *infringements* of those works. That reading works in the overall context of

6

>   the statute, flows naturally from the statutory language, and is supported
>   by the legislative history.

370 F.3d at 194 (emphasis in original). See also Twin Peak Prods., Inc. v. Publications Int'l. Ltd., 996 F.2d 1366, 1381 (2d Cir. 1993) ("The current statute shifts the unit of damages inquiry from number of infringements to number of works."); Walt Disney Co. v. Powell, 897 F.2d 565, 569 (D.C. Cir. 1990) ("Both the text of the Copyright Act and its legislative history make clear that statutory damages are to be calculated according to the number of works infringed, not the number of infringements."); see also Davis v. E.I. DuPont de Nemours & Co., 249 F. Supp. 329, 342-343 (S.D.N.Y. 1966) (infringing broadcast of "Ethan Frome" by 162 CBS television stations constituted one infringement for which plaintiff was entitled to recover one statutory damage award).

Fitzgerald apparently prefers to attempt to avoid the holding of Sonolux *not* by prevailing on his claim in Fitzgerald I that he somehow is entitled to recover multiple statutory damages (an argument noticeably absent from his summary judgment filings in that case), but rather by the simple expedient of filing this second action against the same defendant alleging infringement of the same work at issue in his first-filed action. The Sonolux Court foresaw the possibility of these types of tactics when it stated that its ruling might lead to "game-playing" by plaintiffs attempting to "separate their various claims of infringement as to any one work into separate lawsuits so as to obtain more than one statutory damages award for each infringed work." 370 F.3d at 193.

Game-playing, however, is no substitute for a viable cause of action. Permitting Fitzgerald to pursue this duplicative action cannot be reconciled with § 504(c) or the holding and rationale of Sonolux. Congress surely did not intend that statutory damages would be calculated based on the number of works infringed, and not on the number of infringements, *only when* a plaintiff decides *not* to burden the courts with duplicative actions. Nor is there any indication that the First Circuit refused to permit a multiple statutory damages award in Sonolux simply because the plaintiffs there failed to bring

LITDOCS/652057.1

sixteen separate actions for each infringing album. The reason is obvious -- there would be no surer way to undermine the Congressional purpose underlying § 504(c) than to hold that its salutary effects depend on the number of filing fees a plaintiff is willing to pay.

Principles of law outside the copyright area also are fatal to Fitzgerald's claims in this case. There is no doubt that the claims in both Fitzgerald I and Fitzgerald II arise out of the same transaction or occurrence, and involve precisely the same parties. Judgment in Fitzgerald I (currently in the midst of summary judgment briefing) therefore will be res judicata as to Fitzgerald II. The filing of this action (or the filing of a third next week) cannot change that result.

In short, this action was brought in direct contravention of the Copyright Act's requirement that a plaintiff may recover only one set of statutory damages against any one defendant for any one allegedly infringed work. As a matter of law, Fitzgerald is not entitled to attempt to recover any amounts beyond those alleged in Fitzgerald I (should he ultimately prevail in that action). As a result, this action is wholly without merit and should be dismissed.

**B.     Even if the Stations Are Considered Separate Entities, Fitzgerald Cannot Recover Twice for Joint and Several Conduct.**

Fitzgerald apparently seeks to ignore the fact that he has sued the same defendant in both of his actions in the hopes that CBS-4 and WSBK-TV will be treated as distinct legal entities separately liable for statutory damages. This is a wholly untenable position. CBS-4 and WSBK-TV are assets owned by CBS. They are no more subject to suit, or liable for damages, than are the FCC licenses owned by CBS or the broadcasting tower.

Moreover, even if one were to engage in the pure fiction that the stations are subject to suit, their joint operations would render them jointly and severally responsible for any liability that might be imposed for airing the Flemmi Photograph. Because § 504(c)(1) provides that only one award of statutory damages may be made with respect to any one work "for which any two or more infringers are liable jointly and severally,"

the ability to sue the stations separately would not entitle Fitzgerald to more than one award of statutory damages. 17 U.S.C. § 504(c)(1).

In Bouchat v. Champion Products, Inc., 327 F. Supp.2d 537, 547-548 (D. Md. 2003), for example, the plaintiff filed suit claiming that the use of the "Flying B Logo" by the Baltimore Ravens professional football team infringed the copyright on one of his drawings. Id. at 540. The plaintiff also filed three additional actions naming as defendants "hundreds of manufacturers, distributors, retailers and other entities that used the Flying B Logo in the course of their respective business operations." Id. at 542. Because the multiple defendants were jointly and severally liable for any infringement, the court rejected the plaintiff's argument that he was entitled to more than one award of statutory damages and, in so doing, also rejected the claim splitting rationale advanced by Fitzgerald in this case:

> Bouchat presents the proposition that he is entitled to a separate statutory damages award with respect to each [manufacturer, retailer, distributor, etc.] Defendant. Hence, according to Bouchat's counsel, because he decided to file separate lawsuits, thereby splitting his claim against NFLP [the marketing arm of the National Football League], he can multiply the amount of the statutory damages award. Instead of a discretionary jury statutory damages award from between $750 and $30,000 from NFLP, Bouchat would be entitled to at least 350 of such awards so that, in Bouchat II and IV, the jury would have discretion to give him anywhere from $262,500 to $10,500,000 in statutory damages. Thus, Bouchat, whose actual damages are no more than $10,000 and whose work has been found to have contributed nothing to the infringers' profits, can ask a jury to exercise its discretion to make him a multi-millionaire. <u>As discussed herein, the Court concludes that Bouchat is not entitled to the windfall that he seeks.</u>

Bouchat, 327 F. Supp.2d at 547 (emphasis added). See also Fitzgerald Publishing Co. v. Baylor Publishing Co., 807 F.2d 1110, (2d Cir. 1986) (reversing and holding as "plain error of law" District Court's finding that printer and publisher were not jointly and severally liable for copyright infringement of comic book).

9

Assuming, arguendo, that Fitzgerald can prevail on the merits of his copyright claim, and assuming further that he is permitted to treat CBS-4 and WSBK-TV as separate legal entities amenable to suit, the undisputed factual record demonstrates that the stations' conduct was joint and several and therefore cannot yield more than one statutory damages award under § 504(c)(1). As discussed more fully in the Statement of Facts, the stations operate as one news unit sharing all news employees, news equipment and news resources. Even if, as Fitzgerald apparently contends, they should be treated as separate legal entities, then as a matter of law their conduct was joint and several. See Bouchat, 327 F. Supp.2d at 547-548, quoting Sygma Photo News, Inc. v. High Society Magazine, Inc., 778 F.2d 89, 92 (2d Cir. 1985) ("Multiple parties will be jointly and severally liable for infringement of a copyright when they 'participate in, exercise control over, or benefit from an infringement.'"). Accordingly, "[i]t appearing that since defendants in this case acted jointly and severally, should plaintiff prevail on his claim for statutory damages his relief would be limited to a single award inasmuch as all purportedly infringing acts pertain to a single piece of work." Robles Aponte v. Seventh Day Adventist Church, -- F. Supp.2d --, 2006 WL 2224449*3 (D.P.R. 2006) (finding that several churches and others acted jointly and severally with respect to copying and distribution of part of copyrighted book).

### III.   CONCLUSION

For the forgoing reasons, CBS Broadcasting Inc. respectfully requests that this Court grant its motion to dismiss, or in the alternative, for summary judgment and award defendant its costs and attorneys fees under 17 U.S.C. § 505.

Respectfully submitted,

**CBS BROADCASTING INC.,**

By its attorneys,

/s/ Mary B. Murrane
Jonathan M. Albano, BBO#013850
Mary B. Murrane, BBO# 644448
**BINGHAM MCCUTCHEN LLP**
150 Federal Street
Boston, MA  02110
(617) 951-8000

Dated: September 7, 2006

### Certificate of Service

I hereby certify that this document, which was filed through the ECF system, will be sent electronically to the registered participants as identified on the Notice of Electronic Filing and paper copies will be sent to those indicated as non registered participants by First Class U.S. Mail on September 7, 2006.

/s/ Mary B. Murrane
Mary B. Murrane